Andre ADAMS, Petitioner,

v.

Bernard L. BRAXTON, Respondent.

No. 93–SP–1186.

District of Columbia Court of Appeals.

Argued Feb. 28, 1995.

Decided March 30, 1995.

Kenneth D. Auerbach, appointed by this court, Silver Spring, MD, for petitioner.

Mary L. Wilson, Asst. Corp. Counsel, with whom Vanessa Ruiz, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Before FERREN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

SCHWELB, Associate Judge:

Andre Adams appeals from an order of the trial court denying his petition for a writ of habeas corpus. His principal contention is that the District of Columbia Board of Parole (the Board) failed to comply with its own regulation requiring the review of parole violator detainer warrants every six months. He maintains that as a result of the Board's noncompliance, the subsequent revocation of his parole was unlawful. We affirm.

## I.

In July 1981, Adams was sentenced in the Superior Court to consecutive terms of imprisonment for threats and for weapons and drug offenses. His minimum aggregate term was twenty-six months and twenty days; his maximum aggregate term was eighty months. He was released on parole on August 26, 1983. As a condition of his parole, Adams was required, among other things, to obey all laws (Condition 9), and he was prohibited from possessing a firearm or other deadly weapon (Condition 5).

On September 12, 1984, Adams was rearrested in Maryland and charged with armed robbery with a deadly weapon and with robbery. He was convicted by a jury and, on July 8, 1985, he was sentenced to serve a maximum of thirty-five years.

According to his petition, Adams successfully appealed from his Maryland conviction. On February 28, 1989, he was granted a new trial. In August 1990, Adams was retried and convicted once again. On September 30, 1992, Adams' second conviction was reversed on appeal.[1] Ultimately, on January 28, 1993, Adams entered an Alford[2] plea to robbery and was sentenced to time served.

Meanwhile, on July 22, 1985, the Board issued a parole violator warrant and lodged it as a detainer against Adams, who was then incarcerated in Maryland.[3] According to Adams' petition, the Board next conducted a dispositional review of the detainer in November 1992, and ordered at that time that the detainer remain in effect. On February

---

1. According to Adams' counsel, the decisions reversing his convictions are both unreported.

2. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

3. A detainer in this context is an internal administrative mechanism to assure that an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a parole violation has had an opportunity involved, to act—in this case by taking the inmate into custody or by making a parole revocation determination. When two autonomous jurisdictions are involved, as for example when a federal detainer is placed against an inmate of a state institution, a detainer is a matter of comity. *Moody v. Daggett*, 429 U.S. 78, 80–81 n. 2, 97 S.Ct. 274, 275–76, 50 L.Ed.2d 236 (1976).

10, 1993, having served his Maryland sentence, Adams was committed to the District of Columbia Jail as a parole violator. On March 30, 1993, following a hearing, the Board revoked Adams' parole on the basis of his robbery conviction in Maryland and his possession of a dangerous weapon during the commission of that crime.

■ On June 11, 1993, Adams filed a *pro se* petition for a writ of habeas corpus. He alleged that he was being unlawfully detained by appellee Bernard Braxton, the Administrator of the Occoquan facility operated by the District of Columbia Department of Corrections. On August 10, 1993, the trial judge denied the petition. This appeal followed.[4]

## II.

■ The regulation invoked by Adams provides in pertinent part that "[t]he Board shall review the disposition of each warrant issued as a detainer every six (6) months." 28 DCMR § 218.3 (1987). Adams contends that the Board failed to comply with this regulation during his prolonged incarceration in Maryland and that the subsequent revocation of his parole was therefore unlawful. Braxton does not contest the claim of noncompliance, but contends primarily that the Board's failure to conduct reviews did not prejudice Adams because the detainer would not have been rescinded in any event.

■ Section 218.3 is cast in terms of command. The verb "shall" creates "a duty, not an option." *Riggs Nat. Bank v. District of Columbia,* 581 A.2d 1229, 1257 (D.C.1990) (citations omitted). Its use ordinarily connotes that the duty imposed is mandatory unless such a construction is inconsistent with the manifest intent of the drafter or repugnant to the context of the regulation. *Id.*

The obvious purpose of § 218.3 is to ensure that the Board remains fully apprised of the current status of a parolee against whom a detainer has been lodged, so that it may exercise its informed discretion as to whether the detainer should remain in effect. The Supreme Court has declared that "[r]egulations validly prescribed by a government administrator are binding upon him as well as the citizen." *Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1157, 1 L.Ed.2d 1403 (1957). We have likewise held that an agency must follow its own regulations. *Hanson v. District of Columbia Rental Hous. Comm'n,* 584 A.2d 592, 595 (D.C.1991); *see also Sangamon Valley Television Corp. v. United States,* 106 U.S.App.D.C. 30, 33, 269 F.2d 221, 224 (1959).

■ We note, on the other hand, that the decision to grant or deny parole, and the procedures utilized by the Board to reach that decision, are discretionary in nature. *See, e.g., White v. Hyman,* 647 A.2d 1175, 1179–80 (D.C.1994). Notwithstanding the presumptively mandatory character of "shall," we have construed the word less rigorously in some cases involving public agencies, *see, e.g., District of Columbia v. W.T. Galliher & Bro., Inc.,* 656 A.2d 296, 300 (D.C.1995), especially where, as here, the regulation does not specify the consequences of noncompliance. *See Teamsters Local Union 1714 v. Public Employee Relations Bd.,* 579 A.2d 706, 710 (D.C.1990); *cf. United States v. James Daniel Good Real Property,* —— U.S. ——, ——, 114 S.Ct. 492, 506, 126 L.Ed.2d 490 (1993).

In the present case, we need not decide whether the regulation creates a mandatory duty because, even if it does, a violation of that duty would not entitle Adams to the remedy that he seeks.[5] Specifically, we can-

---

4. The Acting Corporation Counsel, who represents Braxton, has advised the court that the Board reparoled Adams to a halfway house for six months effective July 14, 1994. No party has asked that we dismiss the case as moot, however, and we agree that the issue presented is "capable of repetition but evading review" because inmates challenging Board decisions are frequently paroled or reparoled while their cases are pending appeal. We therefore decline, in the exercise

of our discretion, to dismiss the appeal, *sua sponte,* on mootness grounds. *See In re Melton,* 597 A.2d 892, 908 n. 32 (D.C.1991) (en banc).

5. Braxton contends in his brief that Adams suffered no prejudice from any noncompliance with the regulation because

when a parolee incurs a new conviction and sentence while on parole, it is the practice of the Board to exercise the option of maintaining

not agree with Adams' contention that he is entitled to reversal of the order revoking his parole. Adams has not shown, and we cannot discern, any legally sufficient nexus between the Board's alleged noncompliance and the relief sought.

### III.

■ One of the conditions of Adams' parole was that he refrain from criminal conduct. He did not so refrain. On the contrary, while on parole, he was convicted in Maryland of robbery. The conviction was based on his plea of guilty, albeit an *Alford* plea.[6] At a revocation hearing, Adams would have had no right to relitigate the question of his guilt of the Maryland robbery, for that issue had been conclusively decided against him by his Maryland conviction. *See Morrissey v. Brewer*, 408 U.S. 471, 490, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972).

■ Assuming, without deciding, that the regulation was violated, "[t]here is no presumption or general rule that, for every duty imposed upon the court or the Government and its prosecutors, there must exist some

corollary punitive sanction for departures or omissions, even if negligent." *United States v. Montalvo–Murillo*, 495 U.S. 711, 717, 110 S.Ct. 2072, 2077, 109 L.Ed.2d 720 (1990). Although, as a general rule, "where there is a legal right, there is also a legal remedy," *Brantley v. District of Columbia*, 640 A.2d 181, 184 (D.C.1994) (citations omitted), that remedy must be reasonably related to the violation in question. In *Mack v. United States*, 637 A.2d 430 (D.C.1994), we held that the trial court's erroneous extension of a defendant's preventive pretrial detention beyond the period authorized by statute did not warrant dismissal of the indictment with prejudice, for there was no sufficient nexus between the right violated and the relief sought. *Id.* at 433–34.

*Mack* is instructive here. The purpose of § 218.3 is to ensure that the Board exercises its discretion with respect to the maintenance or withdrawal of a detainer where the parolee is incarcerated *prior to his revocation hearing.* The regulation has nothing to do with the merits of the revocation hearing, or

---

a detainer until [the] offender is released from the custodial portion of [the] intervening sentence. Therefore, it serves no practical purpose to review these cases every six months. For this reason, the Board did not review [Adams'] detainer every six months.

Even if we were to assume that the Board is free to follow a "practice" which is at odds with § 218.3, however, the practice described in his brief does not square with the facts at hand. During two periods totalling almost two years—from February, 1989, when Adams' first conviction was reversed, until August, 1990, when he was convicted for the second time, and from September 30, 1992, when his second conviction was reversed, until January 28, 1993, when he entered his plea—Adams was detained while awaiting trial, and he was not serving a sentence at all. It is worth noting, in this connection, that the original detainer was issued only after Adams had been *convicted;* the existence of a charge against him had not prompted the Board to act.

The Board's failure to conduct reviews, at least during the periods when Adams was not serving a sentence, may well have prejudiced him in a tangible way. He contends, not implausibly, that if the detainer had been withdrawn, and if he could have secured his release on bail in Maryland pending trial, his prospects for preparing a defense for his new trial may well have been significantly enhanced. In *Campbell v. McGruder*, 188 U.S.App.D.C. 258, 580 F.2d 521 (1978),

the court, noting that the limitations imposed by incarceration may hamper preparation of a defense, summarized the substantial empirical evidence tending to show that "the defendant at liberty pending trial stands a better chance of not being convicted or, if convicted, of not receiving a prison sentence." *Id.* at 268–69, 580 F.2d at 531–32.

6. By that plea, Adams recognized that the evidence against him was strong and, indeed, sufficient to make it highly probable that he would be found guilty beyond a reasonable doubt. *Alford,* 400 U.S. at 37–38, 91 S.Ct. at 167–68. Such proof was plainly sufficient to establish a violation of parole, for such a violation need not be established beyond a reasonable doubt. *See, e.g., Standlee v. Smith,* 83 Wash.2d 405, 518 P.2d 721, 722–23 (1974) (en banc); *State v. Wilhite,* 492 S.W.2d 397, 399 (Mo.App.1973); *cf. Burns v. United States,* 287 U.S. 216, 220–21, 53 S.Ct. 154, 155–56, 77 L.Ed. 266 (1932) ("exceptional degree of flexibility" is essential in administration of probation); *Harris v. United States,* 612 A.2d 198, 203–07 (D.C.1992) (preponderance of the evidence is the appropriate minimum standard of proof for establishing violations of probation), *cert. denied,* —— U.S. ——, 113 S.Ct. 1826, 123 L.Ed.2d 455 (1993). The foregoing authorities reflect that the principles applied to parole revocation are essentially the same as those applied to revocation of probation.

with the question whether the defendant's parole should be revoked.

Accordingly, Adams is not entitled to an order reversing the revocation of his parole. Even if he was unlawfully detained for some period in Maryland as a result of the Board's noncompliance with its regulation—an issue which we cannot and do not decide on this record—his detainer in the District at the time he sought his release was not unlawful, and his petition for a writ of habeas corpus was properly denied.

## IV.

■■■ For the foregoing reasons, the order appealed from is hereby

*Affirmed.*[7]

---

**7.** Adams' remaining contentions are without merit. We cannot agree with his claim that he was constitutionally entitled to an earlier revocation hearing, for it is appropriate for that hearing to be held after the parolee has served his intervening sentence. *Bennett v. Ridley*, 633 A.2d 824, 827 n. 2 (D.C.1993), citing *Moody, supra* note 3, 429 U.S. at 89, 97 S.Ct. at 279.

Adams also contends that, at the time the warrant was issued, he did not receive notice of one of the charges which led to the revocation of his parole, namely, that he possessed a deadly weapon, in violation of Condition 5. He claims that in 1993, the Board supplemented the warrant with a charge that he violated Condition 5, and that the Board lacked authority to do so because Adams' parole term had expired. The Board stated in the original charge sheet lodged with the detainer, however, that Adams was in violation of Condition 9 because he had been sentenced to imprisonment for "Armed Robbery *Use of a Handgun.*" (Emphasis added). Although Condition 5 was not specifically identified, Adams was fully apprised of the fact that he was charged with the conduct prohibited by Condition 5, and there was no prejudice.

Braxton's brief contains an extensive discussion of the interplay between the Good Time Credits Act, D.C.Code §§ 24–428 *et seq.* (1989), the regulations of the Department of Corrections, 35 D.C.Reg. 1077, §§ 601.8—601.9 (1988), and the provisions of D.C.Code § 24–206(a) (1989). Adams has not relied on these provisions, and we decline to address the issues raised by Braxton regarding them.