**DISTRICT OF COLUMBIA DEPARTMENT OF PUBLIC WORKS, Appellant,**

v.

**Ellsworth W. COLBERT, Appellee.**

**No. 01–CV–1002.**

District of Columbia Court of Appeals.

Argued May 7, 2002.

Decided May 5, 2005.

William J. Earl, Assistant Attorney General with whom Robert R. Rigsby, Attorney General at the time the brief was filed, and Charles L. Reischel, Deputy Attorney General at the time the brief was filed, were on the brief, for appellant.*

Charles A. Ray, Jr., Washington, for appellee.

Before RUIZ, REID, and GLICKMAN, Associate Judges.

RUIZ, Associate J.

Ellsworth W. Colbert was discharged from employment in the Traffic Safety

* At the time the briefs were filed, Messrs Earl, Rigsby, and Reischel were called Assistant Corporation Counsel, Corporation Counsel, and Deputy Corporation Counsel, respectively. Since that time, however, the Mayor of the District of Columbia has issued an executive order re-designating the Office of Corpo- ration Counsel as the Office of the Attorney General for the District of Columbia. *See* Mayoral Order No. 2004–92, 51 D.C.Reg. 6052 (May 26, 2004) (citing D.C.Code § 1–204.22(2) & (11) (2001)). We therefore employ the titles applicable at the time of this opinion's publication.

Systems Division of the Department of Public Works ("DPW") for inexcusable neglect of duty and insubordination. After he challenged the severity of the sanction, an Administrative Law Judge ("ALJ") determined that DPW's decision took into account impermissible evidence and failed to consider all relevant factors. DPW supplemented the record on appeal to the Board of the Office of Employee Appeals ("Board"), which affirmed DPW's sanction based on its review of the supplemented record and vacated the ALJ's order. The Superior Court, for its part, set aside the Board's order, and reinstated the ALJ's determination that DPW's decision to discharge Colbert was not substantially supported by permissible evidence, and ordered that Colbert be reinstated. DPW then appealed to this court. We hold that the Board exceeded its proper scope of review in determining that Colbert's misconduct warranted dismissal and considering evidence that had not been presented to the ALJ. We also hold that the ALJ erred in excluding evidence of Colbert's

prior work history, and reversing DPW's order for failure to consider relevant factors, rather than remanding the case for a fuller evaluation. Therefore, we remand the case for further proceedings.

## I.

When Colbert challenged the severity of DPW's dismissal sanction, which took effect in January 1998, this case embarked on a long and tortuous path. First, an ALJ with the Office of Employee Appeals ("OEA") initially remanded the case to DPW so that it could reassess the appropriate penalty in light of the ALJ's determination that only two of the original three bases for Colbert's termination were actionable.[1] DPW complied with the remand order and submitted to the ALJ a revised decision that justified the termination on the two remaining charges and relying, in part, on a collection of documents reflecting Colbert's history of serious misconduct and physical violence, including eleven memoranda drawn from Colbert's personnel file.[2] Thereafter, the ALJ issued a

---

1. Initially DPW based its dismissal on three incidents: threats of violence and assault against a supervisor on June 3, 1997; inexcusable neglect of duty by failing to comply with various work directives and rules from June 16 to July 27, 1997; and insubordination, by contravening, on July 21, 1997, the direct order of a supervisor not to visit the premises where the violent altercation had taken place. Although Colbert conceded that the three cited instances of misconduct had taken place, the ALJ determined that DPW could not proceed on the basis of the first one, the altercation with his supervisor, because DPW had not given timely notice of its intent to impose discipline. Under D.C. Code § 1–617.1(b–1)(1) (1992), DPW had 45 business days from the incident to give notice of the proposed adverse action. Because the first incident occurred on June 3, 1997, and Colbert did not receive the notice until August 7, 1997, DPW's decision was two days late. (The 45–day rule has since been repealed.) Although the second and third charges could be sanctioned with dismissal, the ALJ determined that a remand was required because it was not clear from DPW's order whether it would have terminated Colbert without the first charge.

2. DPW submitted: (1) a memorandum dated August 24, 1995 to William McGuirk, Chief of the Traffic Signal Systems Division, from Thomas Jackson, Chief of the Traffic Signal Maintenance Branch, reporting that Colbert threatened to physically harm Jackson; (2) an incident report dated August 29, 1995 alleging that Colbert threatened a security guard with physical violence; (3) an incident report dated August 30, 1995 alleging another threat of physical violence against the same security guard; (4) a letter dated August 31, 1995 from William Long, Traffic Signal Mechanic Foreman, to Jackson, alleging that Colbert initiated a verbal altercation; (5) a memorandum dated September 5, 1995 from Jackson to McGuirk, alleging that Colbert initiated a verbal confrontation with the same security guard and caused a gate to pin the security

decision reversing DPW's determination that Colbert should be dismissed because it had based the penalty on the work history of misconduct evidenced in the eleven memoranda, which, according to the ALJ, fell outside the bounds of evidence permitted by the District Personnel Manual. *See* 6 DCMR § 1608.2.[3] The ALJ additionally concluded that DPW's decision must be reversed because the record failed to show that DPW considered a number of the factors articulated in *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280 (1981),[4] to establish the reasonableness of

guard against a brick wall resulting in injury; (6) a memorandum dated September 6, 1995 to Colbert from McGuirk, informing Colbert that he was being transferred to the Traffic Signal Construction Branch effective September 7, 1995; (7) a memorandum dated March 12, 1996 to Jackson from Karen Benefield, reporting that Colbert persistently refuses to comply with instructions and thereby endangers the safety of fellow workers; (8) a memorandum dated March 20, 1996 to the personnel file from Jackson stating that Colbert refused to leave Jackson's office until Jackson placed a phone call with the Metropolitan Police Department; (9) an incident report dated March 28, 1997 and ensuing documentation, indicating that Colbert was arrested for failure to display a valid driver's license while operating a government vehicle; (10) a memorandum dated June 24, 1997 to Colbert from McGuirk, informing Colbert that he is no longer eligible for a weekend overtime program because he allegedly initiated a verbal altercation with Parney Jenkins, Chief of the Street Construction and Maintenance Branch; (11) a memorandum dated June 28, 1997 to McGuirk from Jenkins, confirming in writing the verbal altercation cited by McGuirk in the June 24 memorandum.

3. At all relevant times, § 1608.2 of the District Personnel Manual provided:

Consideration of an employee's prior record for the purpose of determining penalties shall be subject to the following time limits:

(a) An admonition may be cited only within one (1) year from the date of issuance, and only if not withdrawn earlier in accordance with § 1606.1; and

(b) A reprimand shall be considered a prior offense and may be cited only within two (2) years of the effective date of the reprimand, and only if not withdrawn earlier in accordance with § 1607.2; and

(c) A prior corrective or adverse action shall be considered a prior offense and may be cited only within three (3) years

from the effective date of the action and only if not withdrawn earlier in accordance with § 1602.5.

6 DCMR § 1608.2, 34 D.C.Reg. 1853 (Mar. 20, 1987), *amended by* 6 DCMR § 1606.3, 47 D.C.Reg. 7098 (Sept. 1, 2000).

4. In *Douglas*, the Merit Systems Protection Board recognized twelve factors "generally recognized as relevant":

(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

(2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3) the employee's past disciplinary record;

(4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5) the effect of the offense upon employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(7) consistency of the penalty with any applicable agency table of penalties;

(8) the notoriety of the offense or its impact upon the reputation of the agency;

(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

(10) the potential for the employee's rehabilitation;

(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment,

the penalty. The ALJ ordered DPW to reinstate Colbert, and awarded him back pay and benefits.

DPW then filed a petition for review with the Board claiming that the ALJ's findings were based on an erroneous interpretation of 6 DCMR § 1608.2. See note 3, *supra.* The Board issued an opinion and order stating that it was "not able to conclude that [DPW] fully evaluated its penalty in light of the mitigating factors enunciated in *Douglas.*" The Board accordingly remanded the case to DPW for "consider[ation] [of] each of the *Douglas* factors with regard to [Colbert] and to reconsider the penalty in this case in light of those factors." In response to this second remand, DPW submitted a report ("Agency's Report on Remand") to the Board justifying its action taking into account the *Douglas* factors with respect to the two remaining charges, inexcusable neglect of duty and insubordination.[5] DPW also appended twenty documents that had not

previously been entered into the administrative record.[6] The Board reversed the ALJ's decision because it found, based on a review of the entire record (including the additional documentary submissions), that DPW's decision to terminate Colbert had considered the relevant *Douglas* factors and was supported by substantial evidence. The Board did not expressly address the proper interpretation of 6 DCMR § 1608.2.[7]

Colbert thereafter filed a petition for review with the Superior Court of the District of Columbia, *see* D.C.Code § 1–606.3(d) (1999), which in turn reversed the Board's decision as "clearly erroneous" because it failed to accord proper deference to the ALJ's findings, permitted DPW to justify Colbert's dismissal two years after the fact, and allowed DPW to base its decision on the eleven memoranda rendered incompetent evidence by 6 DCMR § 1608.2. The case comes to us on DPW's appeal from the trial court's order.[8]

harassment, or bad faith, malice or provocation on the part of others involved in the matter; and
(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.
*Douglas*, 5 M.S.P.R. at 305–306. The MSPB further stated that "[n]ot all of these factors will be pertinent in every case, and frequently in the individual case some of the pertinent factors will weigh in the appellant's favor while others may not or may even constitute aggravating circumstances. Selection of an appropriate penalty must thus involve a responsible balancing of the relevant factors in the individual case. *Id.* at 306.

5. DPW found that ten of the twelve *Douglas* factors were relevant. See note 4, *supra.*

6. A representative sample of these documents includes: Colbert's job performance ratings for each year between 1988 and 1996; a letter of caution dated May 19, 1989 to Colbert from Alesandres Perkins, Chief of the TSSD, regarding a physical altercation with another employee; assorted memoranda dat-

ed as early as 1990; and an affidavit dated March 21, 2000 in which McGuirk swore that Colbert's deficient job performance undermined the safety of DPW operations.

7. In the Board's remand order to DPW, there was a notation that "[Board] Member Michael Wolf states that he would rule that in evaluating Employee's prior work record, Agency may utilize the 11 memoranda in Employee's personnel file that recite instances of Employee's past conduct."

8. Following oral argument before this court, we remanded the record to the Board to supplement the record on appeal with omitted documents from the agency proceedings, as well as to brief the court on the following inquiries:

(1) Whether, and if so, how (providing specific citations to opinions/regulations) OEA has adopted as a requirement for all District agencies that penalties be determined after analysis using the factors established by the Merit Systems Protection Board in *Douglas;*

## II.

Even though the case is on appeal from the trial court's ruling, we review the Board's order "as if the appeal had been taken directly to this court." *Hutchinson v. District of Columbia Office of Employee Appeals*, 710 A.2d 227, 230 (D.C.1998). Thus, "we examine the agency record to determine whether there is substantial evidence to support OEA's findings of fact, whether OEA's action was arbitrary, capricious, or an abuse of discretion." *District of Columbia v. King*, 766 A.2d 38, 44 (D.C.2001) (quoting *Office of D.C. Controller v. Frost*, 638 A.2d 657, 660 (D.C.1994)). The scope of OEA's review of an agency decision is limited to "simply ensure that 'managerial discretion has been legitimately invoked and properly exercised.'" *Raphael v. Okyiri*, 740 A.2d 935, 945 (D.C.1999) (quoting *Douglas v. Veterans Administration*, 5 MSPB 313, 328, 5 M.S.P.R. 280 (1981)). While it is the OEA's final decision and not that of the ALJ that may be reviewed by this court, the ALJ's findings of fact are binding at all subsequent levels of review unless they are not supported by substantial evidence. *See id.*

## III.

Colbert contends that the Board erred as a matter of law and violated his right to due process when it considered evidence presented by DPW in its report after the second remand—the twenty additional documents appended to DPW's "Agency Report on Remand"—because none of this evidence was presented to the ALJ and entered into the administrative record. In response to our third item on record remand, see note 8, *supra*, the Board states that DPW "was permitted to submit additional documents after the conclusion of the evidentiary hearing and Colbert was given the opportunity to contest the additional evidence and submit additional evidence of his own. . . . Colbert submitted additional evidence to contest DPW's earlier submission." Although the fact that Colbert was permitted to—and did—comment upon and supplement the additional evidence presented by DPW refutes appellant's due process claim, it does not completely address his procedural challenge. OEA regulations provide that, unless an ALJ directs otherwise, the evidentiary record "shall be closed at the conclusion of the hearing," 6 DCMR § 630.1, 46 D.C.Reg. 9317 (Nov. 19, 1999), at which point "no additional evidence or argument shall be accepted into the record unless the Administrative Judge reopens the record pursuant to Rule 631." *Id.* at § 630.2. Under Rule 631, the record may be reopened only by the authority of the ALJ for the purpose of receiving "further evidence or argument at any time prior to the issuance of the initial decision." *Id.* at § 631.1, 46 D.C.Reg. 9318.[9] Applying the

(2) Whether . . . § 1608.2 limits application of the *Douglas* factors, specifically the 'employee's past disciplinary history' and 'employee's past work record, including . . . performance on the job, ability to get along with fellow workers, and dependability,' and/or the consideration by DPW in this case of documents bearing on this matter; and

(3) Whether DPW·was permitted to submit additional documents after the evidentiary hearing before the [ALJ] was concluded and whether Colbert had the opportunity to

contest such additional evidence and submit evidence of his own.

After the Board responded, the parties were given an opportunity to file supplemental briefs. We have considered the Board's Response on Remand as well as Colbert's supplemental brief; DPW chose not to file a supplemental brief.

9. This regulatory procedure became effective on November 19, 1999, a few months before the Board took action on February 25, and again on May 18, 2000, to resolve DPW's

plain language of the OEA regulations to the record before us, we conclude that the Board's reliance on the additional evidence appended to DPW's "Agency Report on Remand" was not in accordance with the regulation.

Although we agree with Colbert that DPW could not supplement the evidentiary record at the Board level, we reject his argument, adopted by the ALJ and the trial court, that DPW was precluded by 6 DCMR § 1608.2, see note 3, *supra*, from considering the eleven memoranda that were presented by DPW during the hearing before the ALJ. These documents, which detailed Colbert's past conduct, were relevant in applying the *Douglas* factors, specifically, "employee's past work record, including ... performance on the job, ability to get along with fellow workers, and dependability." In response to our second inquiry on record remand, see note 8, *supra*, the Board interpreted § 1608.2 as applying only to the use of previous "admonitions," "reprimands" or

"prior corrective or adverse actions" issued within prescribed time periods as "a second offense for the purpose of imposing a more serious penalty." 6 DCMR § 1608.2. We defer to the Board's reasonable interpretation, based on the text of the regulation, that what the regulation precludes is reliance on stale disciplinary actions for the purpose of determining what sanction is available. *See id.; Hutchinson,* 710 A.2d at 234. In this case, it is undisputed that dismissal was a permissible sanction based solely on the cited charges of neglect of duty and insubordination, even if each were a "first offense." *See Table of Appropriate Penalties.* 6 DCMR § 1618.[10] As noted, Colbert has not contested the underlying facts that support these charges. Consistent with the Board's reasonable interpretation of § 1608.2, DPW did not use the previous disciplinary actions against Colbert for the purpose of determining whether dismissal was available based on prior sanctions for miscon-

petition for review. *See* 6 DCMR § 602.2, 46 D.C.Reg. 9298 (Nov. 19, 1999) ("These rules shall apply to all appeals filed on or after their effective date *and to all appeals then pending final disposition* in the office.") (emphasis added). Under the previous regulations, additional evidence or argument could be admitted into the record whenever the "Board grant[ed] a petition for review pursuant to Rule 637.6." 6 DCMR § 633.2, 39 D.C.Reg. 7424 (Oct. 2, 1992). Former Rule 637.6 separately conferred on the Board the power to "reopen and reconsider an initial decision on its own motion at any time." *Id.* at § 637.6, 39 D.C.Reg. 7426. Under the current regulations, however, the Board has the power to "review an initial decision on its own motion within thirty-five (35) days of issuance of the initial decision." 6 DCMR § 634.5, 46 D.C.Reg. 9320. This narrower authority, moreover, is no longer coupled with the ability to admit additional evidence into the record. *Compare* 6 DCMR § 633.2, 39 D.C.Reg. 7424 *with* 6 DCMR § 634.5, 46 D.C.Reg. 9320; *see also* 6 DCMR §§ 630 & 631, 46 D.C.Reg. 9317.

We understand the change in the regulations to mean that OEA has deliberately limited the Board's authority to appellate-like review, that is, review on the basis of the record before the ALJ, with one exception, see note 10, *infra*, for when "new and material evidence is available that, despite due diligence, was not available when the record closed." 6 DCMR § 634.3(a). This conclusion is significantly bolstered by the new regulations' express purpose of "streamlin[ing] OEA litigation procedures in order to facilitate backlog reduction without compromising the due process rights of the parties ...." 46 D.C.Reg. 9297. Though the legislature has empowered the Board in its discretion to "hear de novo all issues of fact or law relating to an appeal of a decision of a[n][ALJ]," D.C.Code § 1–606.1(d) (1999), it also "may decide to consider only the record made before" the ALJ. *Id.* The current regulations thus comport with the law and we are bound to apply them.

10. *The Table of Appropriate Penalties* sets out a range, from "reprimand to removal" for a first offense of inexcusable neglect of duty or insubordination.

duct, but rather considered the longstanding work history of violent altercations in the workplace in determining what level of sanction—within the available range—was appropriate under the circumstances.

## IV.

■ The trial court's order reversing the Board's decision was based in part on the observation that

[a]lthough the OEA Review Board permitted [DPW] to subsequently perform a *Douglas* analysis (over two years after it had removed [Colbert] from his position), the Court can find no authority, nor has any been cited by the parties, that permits the agency to justify its decision to remove after the [ALJ] has found that the agency failed to perform a *Douglas* analysis. The findings of the [ALJ] may only be reversed if the Review Board determined that the findings were not supported by substantial evidence. *See Office of the District of Columbia Controller v. Frost,* 638 A.2d 657, 660–61 (D.C.1994). The OEA Review Board made no such determination but did determine that there was substantial evidence supporting [DPW's] action.

We concur in the trial court's interpretation of the Board's decision. The Board's analysis states in its entirety that

[a]fter a careful review of the entire record, including these [supplemental] documents [submitted by DPW pursuant to the Board's remand order] as they relate to [DPW's] analysis of the penalty in light of the Douglas factors and the mitigating factors asserted by [Colbert], we find that there is substantial evidence to grant [DPW's] Petition for Review and reverse the [ALJ's] . . . [d]ecision [reinstating Colbert].

■ Setting aside its impermissible reliance on evidence that was not of record

before the ALJ, the Board's reasoning distills to an assertion that it considered the record as a whole and concluded, contrary to the ALJ, that there was substantial evidence to support DPW's decision to terminate Colbert. The Board did not determine that any of the ALJ's findings was unsupported by substantial evidence, but rather posited its own unidentified body of substantial evidence in support of DPW's decision. We find no support for the Board's power to fashion such pronouncements. *See Raphael,* 740 A.2d at 945 (stating that the ALJ's findings of fact are binding at all subsequent levels of review unless unsupported by substantial evidence). OEA regulations provide that

[t]he Board may grant a petition for review when the petition establishes that:

(a) New and material evidence is available that, despite due diligence, was not available when the record closed;

(b) The decision of the Administrative Judge is based on an erroneous interpretation of statute, regulation or policy;

(c) The findings of the Administrative Judge are not based on substantial evidence; or

(d) The initial decision did not address all material issues of law and fact properly raised in the appeal.

6 DCMR § 634.3, 46 D.C.Reg. 9319–20 (Nov. 19, 1999). The Board's final decision is not predicated on any of these defined reasons for reversing an ALJ's decision. There is no indication that the Board deemed the additional information and documents furnished by DPW in its "Agency Report on Remand" to be "new" evidence not reasonably available to the agency before the record closed, *see* 6 DCMR § 634.3(a), nor can we conceive of

how it could be so given the documents' dates and likely repository.[11] See note 6, *supra*. There is, moreover, no critical review of the ALJ's decision with respect to the law or the facts. *See* 6 DCMR § 634.3(b)-(d). Rather, the Board declared that it found (unidentified) substantial evidence in support of DPW's petition. In the absence of a determination that the ALJ misinterpreted the law—as we have determined it did with respect to the proper interpretation of 6 DCMR § 1608.2—or that the ALJ's findings lacked substantial evidence, the Board is not free to draw its own contrary conclusion even if its determination is supported by substantial evidence. *See* 6 DCMR § 634.3, 46 D.C.Reg. 9319-20. Because "[a]n agency is bound by its own regulations," *George Hyman Constr. Co. v. District of Columbia Dep't of Employment Services*, 498 A.2d 563, 565 (D.C.1985) (citing *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Dankman v. District of Columbia Bd. of Elections & Ethics*, 443 A.2d 507, 513 (D.C.1981)), we set aside the Board's order for failure to comply with the regulations governing the admission of evidence into the record, *see* 6 DCMR §§ 630.1 & 630.2, and the permissible legal bases for overturning the ALJ's decision, *see* 6 DCMR § 634.3. We therefore remand to the Board for reconsideration of the ALJ's decision within the established scope of review and limited to the evidentiary record presented to the ALJ.

This does not mean, however, that the ALJ's order to reinstate Colbert can be affirmed. The ALJ rejected DPW's sanction of dismissal, in part, on an incorrect overly restrictive interpretation of the evidence DPW could consider under 6 DCMR § 1608.2. Moreover, the ALJ did not find that Colbert's dismissal could not be substantiated by the evidence, but rather faulted (as incomplete) the analysis followed by DPW in arriving at its sanction. In light of the record, and our interpretation of relevant regulations in this opinion, the Board should remand the case to the ALJ for consideration of DPW's Agency Report on Remand applying the *Douglas* factors, including the additional evidence supplied by DPW and Colbert.[12] *See Stokes v. District of Columbia*, 502 A.2d 1006, 1011 (D.C.1985) ("[i]f the [Board] finds that the agency failed to weigh the relevant factors," it is "appropriate for the [Board] then to specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness.")

*So ordered.*

11. We wish to emphasize that there is a significant legal distinction under the regulations between impermissible "additional" evidence, as we have used the term here, and the newly discovered evidence permitted by 6 DCMR § 634.3(a).

12. As noted, Colbert has already been afforded an opportunity to supplement the record—and did so—upon the Board's remand order.