**DISTRICT OF COLUMBIA, Appellant,**

v.

**DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS and Robert L. Jordan, Appellees.**

No. 03–CV–667.

District of Columbia Court of Appeals.

Argued Nov. 23, 2004.
Decided Sept. 15, 2005.

James C. McKay, Jr., Senior Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward B. Schwab, Acting Deputy Attorney General, were on the brief, for appellant.*

Othello G. Jones, Jr., for appellee Robert L. Jordan.

Sheila G. Barfield, General Counsel for the Office of Employee Appeals, filed a notice in lieu of brief for the appellee District of Columbia Office of Employee Appeals.

Before WASHINGTON, Chief Judge,[1] FARRELL, Associate Judge, and KING, Senior Judge.

WASHINGTON, Chief Judge:

In this case, appellant District of Columbia ("District"), on behalf of the Metropolitan Police Department ("MPD"), appeals an order of the trial court which affirmed appellee District of Columbia Office of Employment Appeals' ("OEA")[2] order in this case. The OEA reversed the MPD's removal of civilian employee Robert L. Jordan ("Jordan") on the basis that the MPD failed to take adverse action against Jordan within the statutory forty-five day time period set forth in D.C.Code § 1.617.1(b–1)(2) (1992).[3] The District argues that the trial court erred in its interpretation of the statute and, thus, erred in its determination of when the forty-five day time period began to toll. We agree and reverse.

**I.**

Jordan, who was serving as Director of Personnel at MPD, was put on a thirty day suspension from June 1 to June 30, 1994, for driving home an agency vehicle in violation of MPD policy. During this time, Jordan applied for unemployment compensation benefits with the D.C. Department of Employment Services ("DOES"). Because Jordan was suspended, and not discharged, for misconduct, he was not eligible for such benefits. After Jordan returned to his employment at MPD, the MPD Office of Internal Affairs ("OIA") learned of Jordan's unauthorized unemployment compensation. On December 9, 1994, the director of OIA wrote a letter to the D.C. Inspector General, informing him that Jordan had received $1,675 in benefits and that the matter was under review by the U.S. Attorney's Office. The letter requested the Inspector

---

* At the time the briefs were filed, Messrs. Spagnoletti, Schwab, and McKay were called Corporation Counsel, Acting Deputy Corporation Counsel, and Senior Assistant Corporation Counsel, respectively. Since that time, however, the Mayor of the District of Columbia has issued an executive order re-designating the Office of Corporation Counsel as the Office of the Attorney General for the District of Columbia. *See* Mayor's Order No. 2004–92, 51 D.C. Reg. 6052 (May 26, 2004) (citing D.C.Code § 1–204.22(2) & (11) (2001)). We therefore employ the titles applicable at the time of this opinion's publication.

1. Chief Judge Washington was an Associate Judge of the court at the time this case was argued. His status changed to Chief Judge on August 6, 2005.

2. The OEA did not file an appellate brief in this case.

3. This statute has since been repealed and has not been replaced with any similar statute.

General to "conduct an audit of the Department of Employment Services, Office of Unemployment Compensation records to determine the extent of unemployment compensation benefits paid to employees of the District of Columbia Government," specifically including Jordan.

On May 22, 1996, the Inspector General issued its report addressing Jordan's alleged fraudulent conduct, sending copies to the D.C. Office of Personnel, the MPD OIA, the United States Attorney for the District of Columbia, and the Director of DOES. The report stated that Jordan had indeed applied for and improperly received unemployment compensation during his period of suspension, but that he also continued receiving benefits after he was reinstated with full pay at the MPD.

On July 18, 1996, Agent Perry Soares of the OIA signed an affidavit seeking an arrest warrant for Jordan based on his alleged theft from the District of Columbia government. Jordan was arrested on August 8, 1996. On September 3, 1996, the MPD issued Jordan an advance notice that he was to be removed from his employment there.

After Jordan filed a petition for review with the OEA, an Administrative Law Judge ("ALJ") reversed the MPD's removal of Jordan. The ALJ held that the MPD failed to notify Jordan of his removal within the statutory forty-five day time frame set forth in § 1.617.1(b–1)(2), which was triggered by the close of a criminal investigation into an employee's cause for removal. The ALJ was unconvinced by MPD's argument that the criminal investigation was closed on August 8, 1996, the day Jordan was arrested. The ALJ stated that the forty-five day period was triggered rather on May 22, 1996, when the Inspector General issued its report. Specifically, the ALJ noted that the Inspector General's investigation "gave the Agency

sufficient awareness of the matters underlying the charges against Employee to decide whether or not to commence adverse action." Thus, because Jordan was given notice of an adverse action on September 3, approximately seventy business days after the Inspector General closed its investigation, the ALJ found that the MPD's removal was untimely. The full OEA affirmed the ALJ's decision, reiterating the ALJ's point that the Inspector General's report made the Agency fully aware of Jordan's misconduct by May 22, 1996.

The District appealed to the trial court, which affirmed the OEA's decision. The trial court held that the forty-five day period within which the MPD was allowed to commence adverse action against Jordan was triggered by the Inspector General's comprehensive report. The trial court held that this report gave the MPD enough information to pursue an adverse action against Jordan and that it also "provided the United States Attorney's Office with probable cause for an arrest warrant." Furthermore, the trial court stated:

> That the Assistant United States Attorney did not apply for the warrant for employee's arrest until July 16, 1996 is irrelevant: petitioner failed to produce any evidence showing that the criminal investigation continued between May 22, 1996 and July 16, 1996. As such, the date of the Inspector General's report is the date signifying the close of the criminal investigation and, thus, the date lifting the toll.

Therefore, since July 16 was the end of the criminal investigation, the trial court held that the agency did not meet the forty-five day period within which it had to commence the adverse action.

## II.

On appeal, the District argues that the trial court erred in interpreting the statute

because a criminal investigation was still ongoing at least until July 18, 1996, when a warrant was issued for Jordan's arrest. The District challenges the trial court's contention that it had enough information on May 22, 1996, to pursue an adverse action against Jordan. The District states that after the Inspector General's report, the U.S. Attorney's Office had to review the evidence and determine the proper charges against Jordan. Because the investigation was still ongoing until the time when Officer Soares from the MPD filed an affidavit in support of an arrest warrant on July 18, the District argues its commencement of an adverse action against Jordan on September 3, 1996, was initiated within forty-five days.[4]

■ Although this case comes to us from the trial court, we review OEA's order as though "the appeal had been taken directly to this court." *District of Columbia Dep't of Pub. Works v. Colbert*, 874 A.2d 353, 358 (D.C.2005) (quoting *Hutchinson v. District of Columbia Office of Employee Appeals*, 710 A.2d 227, 230 (D.C. 1998)). Thus, "we examine the agency record to determine whether there is substantial evidence to support OEA's findings of fact, whether OEA's action was arbitrary, capricious, or an abuse of discretion." *District of Columbia v. King*, 766 A.2d 38, 44 (D.C.2001) (quoting *Office of District of Columbia Controller v. Frost*, 638 A.2d 657, 660 (D.C.1994)) (internal quotation marks omitted).

■ Because this case turns on a matter of statutory interpretation, we review the question of law *de novo*. *District of Columbia v. Cato Inst.*, 829 A.2d 237, 239 (D.C.2003); *District of Columbia v. Jerry M.*, 717 A.2d 866, 868 (D.C.1998). When interpreting the language of a statute, we must look to the plain meaning if the words are clear and unambiguous. *Jeffrey v. United States*, 878 A.2d 1189, 2005 D.C.App. Lexis 332 (D.C. June 30, 2005). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Id.* (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983)). The words of the statute should be interpreted according to the ordinary sense and meaning usually given to them, and should also be read in the light of the statute taken as a whole. *Id.*

■ The statute in question is a provision of D.C.Code § 1–617.1(b–1), the Comprehensive Merit Personnel Act, as amended by D.C. Law 8–128, known as the Corrective Action Amendment Act of 1990. The pertinent part of the statute reads:

(b–1) (1) Except as provided in paragraph (2) of this subsection, no corrective or adverse action shall be commenced pursuant to this section more than 45 days, not including Saturdays, Sundays, or legal holidays, after the date that the agency knew or should have known of the act or occurrence allegedly constituting cause, as that term is defined in subsection (d) of this section.

(2) In the event that the act or occurrence allegedly constituting cause is the subject of an ongoing criminal investigation, the 45–day limit imposed by paragraph (1) of this subsection shall be tolled until the conclusion of the criminal investigation.

### III.

As the District notes in its brief, this case turns upon the interpretation of the

---

4. We need not address Jordan's argument in his brief that the statute setting forth the 45–day requirement is mandatory. The government does not contend that the statute is discretionary, and we see no language in the statute indicating that it is discretionary.

phrase "conclusion of a criminal investigation" under D.C.Code § 1–617.1(b–1). If the forty-five day statutory period began to run from May 22, 1996, the MPD clearly did not commence its adverse action against Jordan in a timely manner. If, however, we find that the forty-five day period began to run later—*e.g.*, from either the date of the arrest warrant or the arrest itself—the MPD acted well within the statutory requirements in commencing an adverse action against Jordan.

Upon a review of the plain language of the statute, we find that OEA and the Superior Court both erred in holding that the "conclusion of [the] criminal investigation" in this case occurred on May 22, 1996, when the Inspector General issued its report. Neither party cites to any binding cases that define when a criminal investigation ends, and we know of none. The natural meaning of the statutory language, however, is that the "conclusion of a criminal investigation" must involve action taken by an entity with prosecutorial authority—that is, the authority to review evidence, and to either charge an individual with commission of a criminal offense, or decide that charges should not be filed.

In this case, the Inspector General, while performing an investigation into the possible occurrence of criminal activity, was not vested with the power to initiate a criminal prosecution against Jordan. *See* D.C.Code § 2–302.08(f) (2001) (stating that Inspector General must "report expeditiously" to Attorney General whenever it believes that a violation of District or Federal law has been committed). That decision was to be made independently by either the Attorney General of the District of Columbia or the U.S. Attorney's Office.

Presumably, that determination would be made after reviewing the Inspector General's report and other materials, and perhaps even after conducting an additional investigation. As such, it is an unreasonable reading of the statute to hold that the May 22, 1996 report would mark the end of a criminal investigation when the prosecuting authority had not yet completed its investigation and made a decision whether to initiate or decline prosecution.[5] Where, as here the Inspector General found evidence of criminal activity and issued his report to the MPD and the U.S. Attorney's Office, we conclude that the criminal investigation had not yet concluded.

We need not decide if, in this case, the arrest warrant or the actual arrest marked the conclusion of a criminal investigation. In many circumstances, even an arrest would not mark the conclusion of a criminal investigation. It is clear, however, that in this case the criminal investigation was *at least* ongoing at the time of the issuance of the arrest warrant on July 18, which would render the MPD's commencement of an adverse action within the forty-five day time period required by the statute.

For the foregoing reasons, we reverse the decision of the trial court and remand the matter to the OEA for further proceedings not inconsistent with this opinion.

*So ordered.*

---

**5.** Although a prolonged period of inactivity by the United States Attorney may signify the end of an investigation, we disagree with the OEA and the trial court that the criminal investigation concluded in this case merely because the record is void of evidence that any further action was taken between May 22 and July 18.