Devon BROWN, Director, District
of Columbia Department of
Corrections, Appellant,

v.

Charles WATTS Sr., Appellee.

No. 08–CV–714.

District of Columbia Court of Appeals.

Argued Sept. 2, 2009.

Decided April 15, 2010.

Mary L. Wilson, Senior Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellant.

J. Michael Hannon, Washington, DC, for appellee.

Before WASHINGTON, Chief Judge, BLACKBURNE–RIGSBY, Associate Judge, and SCHWELB, Senior Judge.

WASHINGTON, Chief Judge:

The District of Columbia Department of Corrections (DOC) terminated the employment of Correctional Treatment Specialist Charles Watts on grounds of malfeasance for failing to process a detainer for an

inmate suspected of terrorist activities.[1] The Office of Employee Appeals (OEA) sustained the termination. On Mr. Watts' petition for review, the trial court reversed the termination and reinstated Mr. Watts with back pay and benefits. We reverse the trial court because (1) the OEA decision was based on substantial evidence in the record, and (2) while the OEA was mistaken in its jurisdictional mandate, Mr. Watts' claim that his termination violated the DOC's Collective Bargaining Agreement (CBA) with the Fraternal Order of the Police was not preserved for review.

## I.

The facts are very simple and uncomplicated. On August 23, 2002, an Immigration and Naturalization Service (INS) Agent faxed to Mr. Watts a detainer for an inmate who was suspected of terrorism.[2] Because no detainer for the inmate was processed into the DOC's data system, he was erroneously released on August 25, 2002. After being interviewed by Internal Affairs Investigators, Mr. Watts was placed on paid leave pending further investigation of the release. On October 10, 2002, Mr. Watts received a fifteen-day advance notice of proposal to remove him from his position.

A disinterested designee was appointed by the DOC to review the proposed action to terminate Mr. Watts. On December 3, 2002, the disinterested designee recommended that:

[i]f Mr. Watts past work record with the department has been unblemished and has been marked by professional conduct and excellent performance, I would recommend severe adverse action in this case short of removal. However, if Mr. Watts has been formally counseled/ disciplined in the past for his performance, judgment, or behavior, then I would support the proposed action.

A month later, the DOC Director issued a notice of final decision terminating Mr. Watts for malfeasance, referencing his "negligence [as] the single contributing factor in the erroneous release."

On March 3, 2003, Mr. Watts appealed his termination to the OEA where the reviewing ALJ found the removal of Mr. Watts to be in compliance with the factors enumerated in *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981),[3] and that Mr. Watts' failure to file

---

1. A detainer is a document that alerts the jail not to release a prisoner at the expiration of his sentence because another jurisdiction would like to take the inmate into custody for another charge. *Adams v. Braxton*, 656 A.2d 729, 731 n. 3 (D.C.1995).

2. The inmate allegedly made threats against then-President George W. Bush following the attacks of September 11, 2001.

3. The Merit System Protection Board (MSPB) has outlined twelve factors that assist an agency in determining the appropriateness of a sanction. In *Douglas*, the following factors were articulated:

(1) The nature and seriousness of the offense, and its relation to the employee's duties, position and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

(2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3) the employee's past disciplinary record;

(4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform his assigned duties;

(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;

the detainer amounted to malfeasance. The ALJ concluded that the penalty of termination was appropriate.

Mr. Watts appealed the ALJ decision to the OEA board and, for the first time, claimed his termination was unlawful because pursuant to the CBA,[4] the DOC was prohibited from issuing him a discipline that was more severe than that recommended by the disinterested designee, in this case, a penalty "short of removal." The OEA board, in affirming the ALJ's decision, ruled that Mr. Watts could not raise the allegation because it was a "collective bargaining claim" and the OEA "is not governed by the rules and procedures of Employee's grievance body." Subsequently, the trial court reversed the OEA's decision finding that Mr. Watts' termination was not supported by substantial evidence in the record, and that the OEA erred in failing to consider Mr. Watts' claim that his termination violated the CBA.

## II.

■ Although this case is before us on appeal from the trial court, we review the OEA's decision as though "the appeal had been taken directly to this court." *District of Columbia Dep't of Pub. Works v. Colbert,* 874 A.2d 353, 358 (D.C.2005). Thus, we "review the factual findings of the agency to determine if there is substantial evidence to support" the OEA's conclusion. *Zhang v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 834 A.2d 97, 101 (D.C.2003). The OEA's decision must not be "arbitrary, capricious, or an abuse of discretion." *District of Columbia v. King,* 766 A.2d 38, 44 (D.C. 2001) (citations omitted). "If, after examining the record as a whole, we conclude that the agency's findings are supported by substantial evidence, we must accept those findings even though the record could support a contrary finding." *Zhang,* 834 A.2d at 101.

■ Despite the trial court's conclusion that Mr. Watts' termination was not supported by the record, we agree with the DOC that there is substantial evidence in the record from which a reasonable mind could conclude that termination was an appropriate penalty. We are also satisfied that the decision was neither arbitrary nor

(7) consistency of the penalty with any applicable agency table of penalties;
(8) the notoriety of the offense and its impact upon the reputation of the agency;
(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;
(10) the potential for employee rehabilitation;
(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and
(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.
*Douglas,* 5 MSPB 313, 5 M.S.P.R. at 305–06. In applying the factors, the MSPB cautioned that "[n]ot all of these factors will be perti-

nent in every case and frequently in the individual case some of the pertinent factors will weigh in the appellant's favor while others may not or may even constitute aggravating circumstances." Hence, "[s]election of an appropriate penalty must thus involve a responsible balancing of the relevant factors in the individual case." *Id.* at 306.

4. Article 11, § 9(D) provides:

Deciding Official shall issue a final decision after reviewing the recommendation of the Disinterested Designee/Hearing Officer. The deciding official may sustain [or] reduce the penalty recommended by the Disinterested Designee, remand the matter for further consideration by the Hearing Officer, or dismiss the charge but may not increase the penalty recommended by the Disinterested Designee/Hearing Officer.

capricious. *See Davidson v. Office of Employee Appeals,* 886 A.2d 70, 72 (D.C.2005) (upholding the OEA's termination of an employee because there was evidence "a reasonable mind might accept as adequate" to support the penalty); *see also Stokes v. District of Columbia,* 502 A.2d 1006, 1010 (D.C.1985) (stating that the court's ability to decide the appropriateness of a penalty is limited to ensuring "managerial discretion has been legitimately invoked and properly exercised"). In this case, the OEA relied on evidence in the record that Mr. Watts was aware of the significant problems the DOC was having with premature releases, that he had been assigned to the Records Office for the express purpose of eradicating such errors, that he was aware that a detainer had been sent by the INS, and that he failed to process the detainer which resulted in the erroneous release of an inmate who was a threat to national security. In reaching its decision, the OEA also relied on evidence that Mr. Watts' failure to process the detainer subjected the DOC to heightened criticism and altered the confidence of Mr. Watts' supervisors in his ability to perform his job effectively. In reaching its decision, the OEA also noted Mr. Watts' lengthy work history and generally "favorable performance ratings" as mitigating factors in deciding whether the sanction imposed was appropriate. *See Douglas, supra,* 5 MSPB 313, 5 M.S.P.R. at 305–306; *see also Colbert, supra,* 874 A.2d at 357. Ultimately, however, the OEA concluded that termination was an appropriate sanction based on the "egregiousness of [the] offense." Because the OEA's findings were supported by substantial evidence in the record and its decision was neither arbitrary nor capricious, we must uphold the OEA's decision even though the record might also support a contrary conclusion. *See Colbert,* 874 A.2d at 361.

## III.

■■ The DOC also challenges on appeal the trial court's ruling that the OEA incorrectly concluded, as a matter of law, that it was jurisdictionally barred from considering Mr. Watts' claim that his termination violated the express terms of the applicable CBA. With respect to this issue, we agree with the trial court that the OEA misinterpreted its statute and unreasonably limited the scope of its jurisdiction. While this court [and the Superior Court] generally defer to an agency's interpretation of its own statute, *District of Columbia Metro. Police Dep't v. Pinkard,* 801 A.2d 86, 90 (D.C.2002), "[we] will not defer to an agency's interpretation if it is inconsistent with the plain language of the statute itself." *Id.* (internal citations omitted).

The CMPA provides that "an appeal from a removal [or other significant adverse employment action] may be made to the Office of Employee Appeals." D.C.Code § 1–616.52(b); *see generally Pinkard, supra,* 801 A.2d at 91. The CMPA also expressly provides that "matters covered under this subchapter that also fall within the coverage of a negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either pursuant to the [appeals procedure contained in the CMPA], or the negotiated grievance procedure, but not both." D.C.Code § 1–616.52(e). Thus, the CMPA recognizes an employee's right to challenge an adverse employment decision either by using the grievance procedures that are contained in an employee's CBA negotiated by the union or by pursuing a remedy under the appeal process contained in the CMPA. *See Johnson v. District of Columbia,* 552 F.3d 806, 810 (D.C.Cir.2008). The only limitation is that the employee must choose between the two

dispute resolution methods at the outset of the appeal. *See* D.C.Code § 1–616.52(e). Because the CMPA gives very broad authority to the OEA to hear and decide any case involving an adverse employment action that results in a removal, the OEA's decision that it is jurisdictionally barred from hearing this particular challenge is directly refuted by the plain language of the CMPA. An aggrieved employee's choice to pursue the CMPA process or the CBA process appears to be a procedural choice, not a substantive one, with one choice leading to a review of the final employment decision by this court, and the other leading to a submission of the final OEA decision to binding arbitration, if the negotiated grievance procedure so provides. Because the OEA's interpretation of its jurisdictional authority conflicts with the plain language of the CMPA, and is not otherwise altered by any provision of the CBA at issue in this case, *see* D.C.Code § 1–616.52(d), the OEA erred in concluding that it lacked jurisdiction to hear and consider Mr. Watts' claim that he was terminated in violation of the terms of the CBA.[5]

Notwithstanding our disagreement with the OEA's interpretation of its jurisdictional mandate, we are satisfied that the error in this case is harmless because Mr. Watts' challenge to his termination on this ground came too late to be heard and considered by the OEA board. Here, Mr. Watts contends that it was a violation of the CBA for the deciding official to terminate him when the disinterested designee recommended a discipline short of termination, provided Mr. Watts' "past work record with the department has been unblemished and has been marked by professional conduct and excellent performance." Mr. Watts is correct that the CBA does preclude the DOC from imposing discipline in excess of that recommended by the disinterested designee. *See* note 4, *supra.* However, in this case, the disinterested designee expressly conditioned his recommendation of a penalty "short of removal" on Mr. Watts' having an "unblemished" record, and if Mr. Watts' record was not "unblemished" then "[he] would support" the penalty of termination.

Whether or not Mr. Watts' work history was "unblemished" is a question of fact

---

5. To the extent that the government argues that the OEA is "not charged with interpreting and enforcing labor contracts," we are equally unpersuaded because the OEA is responsible for enforcing the provisions of 6 DCMR § 1613.2, which includes a neutral review process almost identical to the one at issue here. *See* DCMR § 1600.1 (stating "[t]he rules for the adverse and corrective action system specified in sections 1610 through 1619 of this chapter are established in accordance with the provisions of sections 604 and 1651 of the District of Columbia Government Comprehensive Merit Personnel Act"). Sections 1607 through 1612, covers the procedure an official must take in order to implement corrective or adverse action against an employee. Under Section 1612, a proposed removal action must be reviewed by a hearing officer. After a review of the case, "the hearing officer shall make a written report and recommendation to the deciding of-

ficial." Upon this recommendation, under section 1613, "[t]he deciding official shall either sustain the penalty proposed, reduce it, remand the action with instruction for further consideration, or dismiss the action with or without prejudice, but in no event shall he or she increase the penalty." Thus, the claim by Mr. Watts, that his termination was precluded by the neutral hearing officer's recommendation of a discipline less than removal, is one that is clearly within the competency of the OEA to resolve. Further, were we to agree with the OEA that there are some challenges to adverse actions that cannot be brought before the OEA, aggrieved employees would be deprived of their right to raise any and all viable defenses to their adverse employment actions merely because of their choice of forum. We have no doubt that this result would be inconsistent with the purposes behind the employee appeal rights guaranteed by the CMPA.

that only the ALJ could have resolved, *see Georgetown Univ. v. District of Columbia Dep't of Employment Servs.*, 985 A.2d 431, 433 n. 2 (D.C.2009); *see also Negussie v. District of Columbia Dep't of Employment Servs.*, 915 A.2d 391, 394 (D.C.2007), especially since Mr. Watts' contention that his work history was unblemished and marked with favorable ratings is vigorously disputed by the DOC.[6] The OEA regulations provide that "once the [evidentiary] record is closed, no additional evidence or argument shall be accepted into the record unless the Administrative Judge reopens the record pursuant to Rule 631." *See* 6 DCMR § 630.2. Therefore, in order for a factual issue to be preserved for appeal, it must be raised before the ALJ and be a part of the evidentiary record.[7] *See Colbert, supra,* 874 A.2d at 358. At the administrative hearing, Mr. Watts never argued that his termination was improper because it was a more harsh penalty than the one recommended by the disinterested reviewer. Therefore, the ALJ was never asked to resolve this disputed issue of fact and neither party introduced any evidence on this issue. Further, Mr. Watts never attempted to reopen the record to introduce any evidence supporting his argument before the issuance of the initial decision. Because Mr. Watts' CBA challenge came too late, the OEA's decision that it was without jurisdiction to consider the claim, while error, was harmless. *See Anjuwan v. District of Columbia Dep't of*

Pub. Works, 729 A.2d 883, 886 (D.C.1998) (upholding an OEA's decision to terminate an employee despite the OEA's violation of its statute because the error "did not impair the fairness of the proceedings or the correctness of the action taken").

### IV.

For the foregoing reasons, the decision of the Superior Court is reversed and this case is remanded to the trial court with instructions to affirm the OEA's decision that Mr. Watts was properly terminated from his position as a Correctional Treatment Officer at the DOC.

*So ordered.*

---

6. We are unpersuaded by Mr. Watts' argument that there was no dispute that his performance met the standard required by the disinterested official's recommendation because under 6 DCMR § 1606.2, the DOC was limited to reviewing only his performance reviews from the three years prior to his termination. While under the regulation the DOC might have been restricted from introducing evidence about the underlying basis for any prior discipline imposed on Mr. Watts, nothing in the personnel regulations would have prevented the DOC from introducing evidence

that Mr. Watts had been disciplined previously, *see* 6 DCMR § 1601.6, or prevented the DOC officials from testifying about whether, in their view, Mr. Watts' performance always met the high standard articulated by the reviewing official.

7. Moreover, the decision as to what would be an appropriate sanction short of removal is also one that would require fact finding by the ALJ.