*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0220

CRAIG ROYAL, APPELLANT,

v.

DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT

and

DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2019-CA-004173-P(MPA))

(Hon. Fern Flanagan Saddler, Trial Judge)

(Argued January 4, 2024                    Decided May 2, 2024)

*Daniel S. Crowley*, with whom *Katelyn A. Clarke* was on the brief, for appellant.

*Alex Fumelli*, Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Thais-Lyn Trayer*, Deputy Solicitor General, were on the brief, for appellee District of Columbia Metropolitan Police Department.

*Lasheka Brown*, General Counsel of the District of Columbia Office of Employee Appeals, filed a Statement in Lieu of Brief on behalf of appellee Office of Employee Appeals.

Before BECKWITH and SHANKER, *Associate Judges*, and GLICKMAN, *Senior Judge*.

GLICKMAN, *Senior Judge*: Appellant Craig Royal is a lieutenant with the Metropolitan Police Department (MPD). Before the Office of Employee Appeals (OEA), he challenged two decisions of the MPD to suspend him without pay. The first suspension, for a period of fifteen days, was for Lt. Royal's allegedly deficient response to an incident of possible domestic violence on February 7, 2015. The second suspension, for twenty days, was for using unnecessary force in an off-duty altercation on April 16, 2015, and for "inefficiency" in the performance of his duties apart from that matter. The inefficiency charge was based on three sustained adverse actions within a 16-month period, namely, his suspension for the February 2015 incident and two earlier suspensions.

After an evidentiary hearing, an OEA Administrative Judge (AJ) concluded that the MPD failed to prove either the February 2015 misconduct charges or the April 2015 unnecessary force charge on which it had relied. But while the AJ therefore reversed Lt. Royal's 15-day suspension, he did not overturn the 20-day suspension. The AJ upheld that suspension based on other charges concerning Lt. Royal's conduct in the April 2015 incident that the MPD itself had considered and rejected, and on the inefficiency charge. The AJ did not explain why he upheld the inefficiency charge even though he had rejected the February 2015 complaints

on which that charge was partly grounded. The Superior Court affirmed the AJ's decision on Lt. Royal's petition for review.

In this court, Lt. Royal contends he is entitled to reversal of his 20-day suspension as well as his 15-day suspension because the OEA exceeded its authority by basing its decision on charges that the MPD itself had not sustained and for which the MPD had not sanctioned him, and because the OEA's determination regarding the inefficiency charge was not supported by substantial evidence. For the reasons that follow, we agree with Lt. Royal's contentions. Accordingly, we reverse the OEA's determination upholding the 20-day suspension. We leave in effect that portion of the OEA's order relating to the 15-day suspension.

## I.

### A. The February 2015 Incident

On February 7, 2015, Lt. Royal was off duty and at his residence—an apartment building he owned in Northwest D.C.—when he heard a woman's screams coming from inside one of the other apartments. Lt. Royal went to that apartment, concluded there had been a quarrel but the woman had not been harmed or assaulted, and escorted her out of the building. In its notice of proposed adverse action, the MPD faulted Lt. Royal's response as a "[f]ailure to obey orders or

directives issued by the Chief of Police" and proposed imposition of a 15-day suspension as the penalty. The notice alleged three specific violations by Lt. Royal:

> **Specification No. 1:** In that, on February 7, 2015, while off-duty, you responded to . . . Apartment #23, because you heard what you believed was an assault in progress. Once inside the apartment you made only a minimal attempt to determine what had transpired and thus failed to properly handle the domestic violence assault that had taken place [in violation of his duty as the first officer on the scene to "[d]etermine whether a crime has been committed and, if so, the exact nature of the event."]

> **Specification No. 2:** . . . Once inside the apartment you failed to obtain translation services to ensure you could properly understand the subjects inside the apartment [in violation of his duty to provide language access services "[i]n every circumstance where limited or no-English proficient (LEP/NEP) persons and MPD members need to communicate."]

> **Specification No. 3:** . . . Once on the scene you took police action without notifying on-duty members of the department either prior to or after your actions.

Lt. Royal appealed the proposed adverse action, and the Director of the MPD's Human Resource Management Division issued a final notice on August 27, 2015, affirming the 15-day suspension. Lt. Royal appealed that decision to the Chief of Police, who denied the appeal on October 2, 2015. Lt. Royal then appealed the matter to the Office of Employee Appeals.

## B. The April 2015 Incident

On April 16, 2015, Lt. Royal was off duty and out of uniform when he observed a construction van pull into his apartment building's private parking lot and park there in violation of no-parking signs. Lt. Royal approached the driver of the van and told him he could not park there, but the driver did not immediately move the vehicle; according to the driver's later testimony, he did not have the keys and called a fellow construction worker to bring them. Seeking to have the van ticketed, Lt. Royal retrieved his "less than lethal" police weapons, moved his parents' minivan to block the vehicle from leaving the parking lot, and then called the police. While he waited, the van's driver returned with a second person. They proceeded to maneuver a car that was parked in the lot around the minivan. Believing he saw the car strike the minivan and then drive off, Lt. Royal called 911 to report the "accident" and followed the construction van on foot.

During the 911 call, the two construction workers got out of the van and confronted Lt. Royal. Lt. Royal was not in uniform and he did not identify himself to the men as a police officer. A heated confrontation ensued. According to Lt. Royal, the men threatened him, moved aggressively toward him, and ignored his repeated orders to back off even after he pulled out his police baton and a canister of Oleoresin Capsicum ("OC") spray (a deterrent similar to pepper spray). As the

men continued to close in on him and threatened to beat him up, Lt. Royal attempted to discharge his OC spray at them. The spray malfunctioned, however, and did not affect anyone. Lt. Royal then retreated to his apartment and awaited the arrival of the police he had summoned, to whom he reported what had occurred.

In November 2015, the MPD's Disciplinary Review Branch proposed that Lt. Royal be terminated from the police force. The notice of proposed adverse action listed seven charges of misconduct. Six of the charges related to the April 16 encounter at the parking lot. They included charges of making a false report of damage to his parents' minivan, unnecessary or unreasonable employment of force in resorting to the use of the OC spray, failure to notify on-duty officers before taking police action, and failing to care for a suspect in his custody after employing the OC spray.

The seventh charge was for "inefficiency as evidenced by repeated and well-founded complaints from superior officers, or others, concerning the performance of police duty, or the neglect of duty." This charge was not based on complaints pertaining to the April 16 encounter at all, but rather rested on the previously sustained charges of misconduct in the February 7, 2015, incident and two earlier disciplinary actions against Lt. Royal—a three-day suspension imposed in July 2014 for failure to complete and submit an investigation on time,

and a two-day suspension imposed in January 2015 for improper conduct with a subject while in an off-duty status.

Lt. Royal requested a hearing before an adverse action panel to contest the proposed termination. The panel heard witness testimony and reviewed evidence on April 19 and May 2, 2016. The panel sustained only two of the seven proposed charges—Charge 4 and Charge 7—and found Lt. Royal "not guilty" of the other five charges. The panel made findings with respect to each charge. It found Lt. Royal guilty of Charge 4 because he "intentionally created and then escalated the situation to the point that he had no choice but to use force" (i.e., his deployment of the OC spray). With respect to Charge 7, "[t]he Panel after reviewing the findings and merits of each case concluded that, although the conduct occurred over a sixteen-month period, there was a sustained pattern of misconduct that rose to the level of inefficiency."[1] In lieu of the initially proposed sanction of termination, the panel

---

[1] As we explain below, the General Order defining the charge of inefficiency provides, inter alia, that "[t]hree sustained Adverse Actions *within a 12-month period* upon charges involving misconduct . . . shall be prima facie evidence of inefficiency" (emphasis added). MPD General Order 120.21. In Lt. Royal's case, the amended specification of Charge 7 explained that the three sustained adverse actions against him *within a sixteen-month period*, "while not prima facie evidence of inefficiency, point to a pattern of sustained misconduct which in and of itself is evidence of inefficiency."

recommended a 10-day suspension on Charge 4 and a consecutive 15-day suspension on Charge 7.

Lt. Royal appealed the panel's decision to the director of the MPD's Human Resource Management Division, who reduced the suspension on Charge 7 to ten days, and then to the Chief of Police, who affirmed the aggregate 20-day suspension on April 12, 2017. Lt. Royal then appealed to the OEA.

## C. OEA Proceedings

Lt. Royal's two appeals were assigned to Administrative Judge Lim and were consolidated at the parties' request. The parties' submissions included stipulations of fact. After receiving them, and in light of the parties' remaining disagreements, AJ Lim held an evidentiary hearing to resolve disputed factual issues. Afterwards, both Lt. Royal and the MPD submitted post-hearing briefs. Their arguments focused on whether the evidence supported the three charges underlying the 15-day suspension and the two charges—Charges 4 and 7—on which the 20-day suspension was based. Neither party even addressed the charges on which the adverse action panel had found Lt. Royal not guilty; the MPD never argued for upholding his suspension on the basis of those charges.

AJ Lim issued the OEA's Initial Decision on April 29, 2019.[2]  With respect to the February 2015 incident, AJ Lim found that Lt. Royal disproved each of the three charges and established by a preponderance of the evidence that he did not violate the MPD's regulations.  More specifically, the AJ found that no domestic violence assault had occurred, that Lt. Royal had reasonably determined that translation services were not needed, and that "as there was no assault, [Lt. Royal] had no duty to notify the police."  Accordingly, the AJ reversed the 15-day suspension.

With respect to the April 2015 incident, AJ Lim also found in Lt. Royal's favor on Charge 4.  He explained this determination as follows:

> The sole specification for Charge 4 alleges that, on April 16, 2015, while off-duty and at the scene . . . [Lt. Royal] unjustifiabl[y] used OC Spray in a manner that escalated conflict.  Based on the facts in this matter, I find that while [Lt. Royal] should have first used verbal persuasion and a declaration that he is a police officer before using an OC Spray, he then found himself in reasonable fear of imminent attack when [the men he confronted] approached him in a threatening manner.  I therefore find that [MPD] did not prove by a preponderance of the

---

[2] An Initial Decision becomes a final decision of the OEA thirty-five calendar days after issuance unless a party to the proceeding files a timely petition for review with the OEA or in Superior Court.  *See* 6B D.C.M.R. § 635.

evidence that [Lt. Royal's] use of the OC Spray at that point was unjustified.

The AJ upheld Charge 7, however. He explained this decision as follows:

> The sole specification for this charge alleges that, during the past twelve (12) [sic[3]] months, [Lt. Royal] had three complaints lodged against him for which he was suspended from duty. [MPD] listed [one of the complaints arising from the February 2015 incident and the two complaints relating to the two earlier incidents.] [Lt. Royal] does not deny having these priors in his work record. Thus, I find that [MPD] proved by a preponderance of the evidence that [Lt. Royal] is guilty of Inefficiency.

The AJ did not explain why he relied on Lt. Royal's suspension based on the February 2015 incident to support his inefficiency finding after having determined that Lt. Royal had disproved the charges connected with that incident.

By themselves, the AJ's findings as to Charges 4 and 7 would have supported a reduction of Lt. Royal's suspension from twenty days to ten days (given that the MPD had assessed a ten-day penalty for each sustained charge). However, despite neither party having requested it, AJ Lim on his own initiative also considered whether Lt. Royal's conduct in the April 2015 altercation supported any of the five other proposed charges arising out of the April 2015 altercation. The AJ did not

---

[3] AJ Lim noted elsewhere that the MPD had amended the specification for Charge 7 to provide that it covered a period of sixteen months rather than twelve months.

explain why he addressed charges that were not the basis for the suspension at issue. It appears he did so without fully appreciating that the MPD's adverse action panel had acquitted Lt. Royal of those five charges and had not based its proposed sanction on them or sought to establish them on appeal.[4] The AJ concluded that two of those charges—Charges 2 and 3—were supported by a preponderance of the evidence (while Charges 1, 5, and 6, in addition to Charge 4, were not).

Charges 2 and 3, like Charge 4, related to Lt. Royal's use of OC Spray and asserted violations of MPD prohibitions on the use of unnecessary force. The AJ found that Lt. Royal violated Charge 2 because he failed to give verbal warnings before he used his OC Spray, and Charge 3 because he lacked "legal cause to detain" the complainants or to "block their exit just to ascertain that they [would] receive parking tickets."

Based on his findings that a preponderance of the evidence supported Charges 2 and 3 in addition to Charge 7, the AJ upheld the 20-day suspension as reasonable and appropriate.

---

[4] We say this because the AJ's opinion lists all the charges and discusses whether the MPD met its burden of proving each one of them by a preponderance of the evidence, without acknowledging that the MPD itself found Lt. Royal not guilty of five of the charges and did not rely on those charges or purport to have proven them.

### D. The Appeals to Superior Court and This Court

Lt. Royal filed a petition for review of the OEA's decision in Superior Court, contending *inter alia* that the OEA did not have jurisdiction to uphold his suspension based on Charges 2 and 3, and that the AJ's decision to sustain Charge 7 was not supported by substantial evidence. The court disagreed with those contentions and denied the petition on March 7, 2022, thereby affirming the OEA decision. Lt. Royal then took the instant appeal to this court, where he renews those two challenges.

The MPD did not seek relief in Superior Court, and it has not cross-appealed. It thus has not challenged the AJ's decision overturning Lt. Royal's suspension for his conduct in the February 2015 incident, nor the AJ's determination that the MPD did not prove Charge 4 in connection with the April 2015 incident.

### II.

Although this case is before us on appeal from the Superior Court, "we review the OEA's decision as though 'the appeal had been taken directly to this court.'"[5] To survive that review, the decision "must state findings of fact on each material contested factual issue; those findings must be supported by substantial evidence in

---

[5] *Brown v. Watts*, 993 A.2d 529, 532 (D.C. 2010) (quoting *District of Columbia Dep't of Pub. Works v. Colbert*, 874 A.2d 353, 358 (D.C. 2005)).

the [OEA] record; and the [OEA's] conclusions of law must follow rationally from its findings."[6]  We will not affirm a decision if it is arbitrary, capricious, or an abuse of discretion,[7] or if it exceeds the OEA's statutory authority.[8]

### A. The OEA's "Jurisdiction" to Consider Charges 2 and 3

The first issue we address is whether the OEA had what has been termed "jurisdiction" to consider Charge 2 and Charge 3 after the MPD Adverse action panel found Lt. Royal not guilty of those two charges.  Lt. Royal argues that the OEA exceeded its jurisdiction because Charges 2 and 3 were not part of the final agency decision.  With a caveat regarding the appropriate terminology, we agree with Lt. Royal that the OEA's adjudicative authority does not extend to charges on which the agency did not rely.

The OEA is authorized by law to "review the record and uphold, reverse, or modify" an agency decision removing a District employee from service or

---

[6] *D.C. Fire and Med. Servs. Dep't v. D.C. Off. of Emp. App.*, 986 A.2d 419, 424 (D.C. 2010) (internal quotation marks omitted).

[7] *Brown*, 993 A.2d at 532.

[8] *District of Columbia v. 17M Associates, LLC*, 98 A.3d 954, 959 (D.C. 2014) ("An administrative agency is a creature of statute and may not act in excess of its statutory authority." (internal quotation marks omitted)).

suspending the employee for ten days or more.[9]   A reviewable "final agency decision" is defined as "a written document from a District agency which contains the cause of action taken by the District agency against an employee."[10]

The scope of this adjudicative authority has been characterized, somewhat imprecisely, as a question of agency "jurisdiction"; thus, the Rules and Regulations of the Office of Employee Appeals in the Code of Municipal Regulations state that the OEA's "jurisdiction" to conduct such review is confined to "final agency decision[s] affecting" the removal or suspension.[11]   As we have explained, this terminology can be misleading.  Although we may sometimes speak of the OEA's jurisdiction, "jurisdictional doctrines applicable to courts cannot be directly transposed onto administrative agencies."[12]   Therefore, we "ask not whether an agency has jurisdiction over a party or a dispute in the traditional sense of the term,

---

[9] D.C. Code § 1-606.03(b).

[10] 6B D.C.M.R. § 699.1.

[11] *Id.* § 604.1 ("Jurisdiction").

[12] *AFGE Nat'l Off. v. D.C. Pub. Emp. Rels. Bd.*, 237 A.3d 81, 86 (D.C. 2020).

but 'whether the statutory text [or implementing rule] forecloses the agency's assertion of authority, or not.'"[13]

The OEA's oversight function in appeals of agency disciplinary actions is a limited one. "[T]he OEA is not to substitute its judgment for that of the agency[;] its role . . . is simply to ensure that 'managerial discretion has been legitimately invoked and properly exercised.'"[14] We understand this to mean that the OEA must focus on the soundness of the charges that the agency actually sustained and relied upon in imposing it. It exceeds the OEA's role to consider other possible reasons for disciplining the employee that the agency did not pursue or rejected. The OEA's role is not to second-guess an agency's deliberate decision to acquit an employee of charges.

Thus, in the present case, the OEA had the authority to review the soundness of the MPD's "final agency decision" to impose a 20-day suspension on Lt. Royal. But that decision was based on and "contained" only the charges of which the MPD had found Lt. Royal guilty, Charges 4 and 7. Those two charges constituted the

---

[13] *Id.* (quoting *City of Arlington v. FCC*, 569 U.S. 290, 301 (2013)).

[14] *Raphael v. Okyiri*, 740 A.2d 935, 945 (D.C. 1999) (quoting *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 328, 5 M.S.P.R. 280, 301 (1981)); *accord Office of D.C. Controller v. Frost*, 638 A.2d 657, 660 (D.C. 1994) (quoting *Stokes v. District of Columbia*, 502 A.2d 1006, 1009-10 (D.C. 1985) (quoting *Douglas, supra*)).

entire "cause" contained in the final MPD decision of the "action taken" against Lt. Royal that he appealed to the OEA. Charges 2 and 3 were not part of the "cause" contained in that final agency decision because the MPD had concluded that Lt. Royal was not guilty of those charges. Nor were Charges 2 and 3 the cause, in whole or part, of any other "final agency decision affecting" Lt. Royal's removal, suspension, or any other appealable adverse action taken against him. And no one purported to appeal Lt. Royal's acquittals to the OEA. In fact, in its brief before the OEA, the MPD took the position that the adverse action panel's conclusions regarding a charge on which it found Lt. Royal not guilty were "irrelevant to this appeal."

It follows that the OEA's authorized power to review the MPD's final decision to suspend Lt. Royal was limited to determining whether Charges 4 and 7 constituted good cause for that decision. Because Charges 2 and 3 were not the cause of the MPD's reviewable action, the OEA lacked authority to consider whether those charges could sustain the suspension. The MPD's discretionary decision to acquit Lt. Royal of Charges 2 and 3 was not reviewable.[15]

---

[15] On appeal, the MPD argues that the words "cause of action" in the definition of a "final agency decision" refer to "the relevant nucleus of facts supporting a legal claim or charge, rather than the claim or charge itself," and that the OEA therefore had independent jurisdiction to reconsider charges on which the MPD had acquitted

This conclusion is compelled, as well, by considerations of fairness to the employee, who is entitled to notice of the charges against which he must defend. In *Frost*, this court held that the OEA erred in upholding discipline based on its finding of a violation with which the employee had not been charged by the agency; in such circumstances, we explained, the employee had no notice and "could not have been expected to prepare to defend against" the charge before the OEA.[16]

The situation in this case is analogous to that in *Frost*. The MPD did not rely on Charges 2 and 3 before the OEA, Lt. Royal did not have notice that the OEA

Lt. Royal. We consider this an unduly expansive reading of the definition of a "final agency decision." That definition focuses on what the agency decision identifies as the "cause" of the disciplinary "action taken by the District agency against an employee." 6B D.C.M.R. § 699.1. Only charges that the agency sustained against the employee can be said to constitute that "cause"; not charges the agency rejected or never considered.

The MPD also asserts that there was "significant overlap between Charges 2, 3, and 4" and that "[i]t can hardly be reversible error for OEA, on de novo review, to choose to evaluate these identical or near-identical charges slightly differently from the Adverse Action Panel." However, we need not consider this argument because we conclude that the OEA did not have authority to consider the unsustained charges at all. *See Goto v. D.C. Bd. of Zoning Adjustment*, 423 A.2d 917, 928 (D.C. 1980) (Kelly, J., concurring) ("[A]n agency's faulty interpretation of its governing jurisdictional regulations can never be harmless error.").

[16] *Frost*, 638 A.2d at 663.

would consider those two charges, and he therefore had no reason to address them on appeal and did not do so.[17]

We appreciate that *Frost* held that the OEA could not uphold discipline based on a charge against the employee that the agency had not levied in the first place, rather than (as here) a charge on which the agency actually had acquitted the employee.[18]  However, we consider that difference immaterial.  In either situation, the employee was not on notice that the OEA might uphold the agency's disciplinary action based on charges other than those the agency relied upon.

---

[17] The MPD argues that the OEA itself put Lt. Royal on notice that it would reconsider his guilt of all the charges he had faced, including those on which the MPD had acquitted him, because AJ Lim's order consolidating Lt. Royal's two appeals described the relevant "issue" for briefing as "[w]hether [the MPD] has cause for adverse action against [Lt. Royal]."  We disagree for two reasons.  First, the general language used by AJ Lim does not at all make clear that he would consider whether charges that the MPD itself had dismissed might constitute cause for the MPD's adverse action.  The MPD itself did not understand that.  Second, the MPD's argument that AJ Lim gave Lt. Royal the necessary notice that acquitted charges would be considered rests on the assumption that the OEA actually has the authority to determine the charges and discipline an employee in the first instance, or to second-guess an agency's decision to acquit an employee of charges.  But as explained above, that assumption is incorrect; the OEA's review authority does not extend that far.  An AJ cannot expand the scope of the issues on appeal by mere fiat.  If one proceeds with a *proper* understanding of the OEA's limited appellate authority, framing the issue before the OEA as whether the employer agency has cause for adverse action against the employee cannot serve to put the employee on notice that the OEA can consider charges that the agency did not rely on and acquitted the employee of.

[18] *See id.*

For the foregoing reasons, we hold that AJ Lim erred in considering Charges 2 and 3 sua sponte, and in relying on their validity in his decision to uphold Lt. Royal's 20-day suspension.

## B. The Evidence Supporting Charge 7

The second issue is whether there is substantial evidence to support the OEA's affirmance of Charge 7, for inefficiency, against Lt. Royal. An MPD General Order, relied upon in this case, defines inefficiency as follows:

> Inefficiency as evidenced by repeated and well-founded complaints from superior officers, or others, concerning the performance of police duty, or the neglect of duty. Three sustained Adverse Actions within a 12-month period upon charges involving misconduct, as provided in this section, shall be prima facie evidence of inefficiency. The Adverse Action charges need not be related.[19]

Lt. Royal argues that there are two independently sufficient reasons Charge 7 was not supported by substantial evidence: (1) The MPD needed to prove a "prima facie" case of inefficiency as described in the General Order, and it failed to do so because the three sustained adverse actions on which the MPD relied were not within

---

[19] MPD General Order 120.21; *see also* 6A D.C.M.R. § 1001.7 ("Three convictions before trial boards or any summary hearings as authorized by the Mayor, or both, within a period of twelve (12) months upon charges involving violations of the rules and regulations of the department shall be *prima facie* evidence of inefficiency.").

a twelve-month period; and (2) the charge of inefficiency rested in part on the February 2015 charges, and AJ Lim found that the evidence did not support those charges. We address each of these arguments in turn.

### 1. The "Prima Facie Evidence" Criterion

The definition of inefficiency in General Order 120.21 provides two descriptions of "inefficiency" for which an officer may be disciplined. The first description refers to inefficiency "as evidenced by repeated and well-founded complaints from superior officers, or others, concerning the performance of police duty, or the neglect of duty."[20] The phrasing "as evidenced by" implies that "repeated and well-founded complaints" regarding performance or neglect of duty are necessary for a finding of inefficiency (other kinds of complaints appear to be excluded), if not always sufficient for such a finding. (They might be found insufficient if, for example, the complaints are rebutted or mitigated, or there exist other requirements for a finding of inefficiency that are not satisfied).

The second description states that "[t]hree sustained Adverse Actions within a 12-month period upon charges involving misconduct" shall be "prima facie

---

[20] MPD General Order 120.21.

evidence" of inefficiency.[21]    The term "prima facie evidence" is commonly understood to mean "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced."[22]    When unrefuted, prima facie evidence is sufficient to support a particular finding.  But while certain evidence may be deemed sufficient, that particular evidence may not be necessary.  Other evidence may also constitute sufficient proof of the fact to be established.[23]  The second description of inefficiency therefore can be viewed as a subset of the first, i.e., three sustained adverse actions in a twelve-month period will suffice to constitute the requisite "repeated and well-founded complaints" for a finding of inefficiency, but other evidence of a pattern of well-founded complaints may be judged sufficient as well.

Lt. Royal posits a stronger connection between the two descriptions of inefficiency; he argues that the second description must be understood as providing

---

[21] *Id.*

[22] *Prima facie evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see, e.g.*, *Am. Studies Ass'n v. Bronner*, 259 A.3d 728, 744 n.57 (D.C. 2021).

[23] *See, e.g.*, D.C. Code § 23-1327 (b)-(c) (providing that "[a]ny failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is willful," but that factfinders may consider other evidence in finding that a failure to appear is willful).  To give another example, we have said that "a rebuttable presumption that any person driving a car does so with the consent of the registered owner" is "prima facie evidence" of the owner's vicarious liability for a traffic accident or infraction involving that car. *Agomo v. Fenty*, 916 A.2d 181, 192 (D.C. 2007).  Obviously, however, the owner's consent may be proved or disproved by evidence apart from the presumption (and such proof may be necessary to establish the owner's vicarious liability when there is rebuttal evidence).

a limiting definition of "repeated and well-founded complaints," and that it sets forth the one and only way that a charge of inefficiency can be proved. Otherwise, he argues, the second description serves no purpose and is meaningless. However, this is clearly not the MPD's own interpretation of its definition of inefficiency, as demonstrated by the Amended Notice of Proposed Adverse Action, the Adverse action panel's finding that three sustained adverse actions against Lt. Royal sufficed to prove the charge of inefficiency even though they occurred during a sixteen-month period rather than within a period of only twelve months, and the MPD's testimony before the OEA. Additionally, specifying that three sustained adverse actions in twelve months will establish a prima facie case is certainly helpful and meaningful even if other evidence of a series of well-founded complaints may also prove inefficiency. It removes uncertainty in many circumstances and furnishes a useful benchmark in evaluating whether alternative comparable evidence is serious enough to justify a finding of inefficiency. On the other hand, viewing the specified prima facie case as the only way to prove inefficiency is implausible because, if that were so, the General Order's first description of inefficiency would be superfluous.

We conclude that there is nothing implausible about the MPD's understanding that, while three sustained adverse actions within a twelve-month period will suffice to prove a charge of inefficiency if not rebutted, such a charge may be proved by other evidence of repeated and well-founded complaints of misconduct. And where,

as here, the Adverse action panel has sustained three adverse actions against an officer, and those actions did not establish a prima facie case of inefficiency only because they fell within a period a little longer than twelve months, we cannot say it is unreasonable to construe the MPD's definition of inefficiency as applicable. If anything, strictly limiting that definition, as Lt. Royal proposes, would appear to narrow it unreasonably.

## 2. The OEA's Basis for Upholding the Charge of Inefficiency

That said, we agree with Lt. Royal that the AJ's findings in this case are insufficient to uphold the conclusion that the MPD proved the inefficiency charge against Lt. Royal by a preponderance of the evidence. Indeed, the AJ's factual findings mandate rejection of that charge.

The specification of the charge of inefficiency predicated it on three complaints "for which [Lt. Royal] was suspended from duty." The three complaints identified in the specification arose from the February 2015 incident and two prior incidents. AJ Lim upheld the inefficiency charge based solely on the fact that Lt. Royal "does not deny having these priors in his work record." By itself, this finding was inadequate to justify the inefficiency charge, because that charge depended on whether the complaints had been sustained or (even if not sustained) were well-founded. And that precondition was not met here. While the two earlier

complaints were sustained—they resulted in Lt. Royal's suspensions for three days in July 2014 and two days in January 2015—the complaints arising from the February 2015 incident were not sustained. As discussed above, AJ Lim himself found not only that the evidence did not support the February 2015 complaints, but also that Lt. Royal had "proven by a preponderance of the evidence" that he did not commit any of the violations with which he was charged as a result of the February 2015 matter. Nor did the AJ find that any of the February 2015 complaints were well-founded, and we do not see how he could have reached such a conclusion given his express findings that the evidence did not support those complaints and that Lt. Royal disproved them.[24] Furthermore, we also do not see how the inefficiency charge against Lt. Royal could be upheld based solely on the two prior complaints that led to suspensions of three days in July 2014 and two days in January 2015. These two suspensions did not amount to prima facie evidence of inefficiency as defined in the General Order, and before the OEA, the MPD reiterated that the Adverse action panel found Lt. Royal guilty on Charge 7 "*because* [he] had three sustained adverse actions," and that "[t]he preponderance of the evidence"

---

[24] The MPD argues that the fact that the adverse action panel sustained the charges related to the February 2015 incident provides some indication that they were well-founded. But the issue is whether the OEA made the necessary finding, not whether another adjudicator did.

demonstrated his guilt of Charge 7 "*because* he had three prior sustained adverse actions." (Emphasis added.) Nor has the MPD argued on appeal that the two underlying complaints were enough by themselves to prove inefficiency.[25]

Accordingly, we must hold that the OEA's conclusion upholding the inefficiency charge against Lt. Royal does not "follow rationally from its findings,"[26] and is not supported by the credited evidence. And given the AJ's explicit findings that the February 2015 bases of the inefficiency charge were disproven, we do not perceive it necessary to remand for further findings on any material, contested issues of fact.[27] No material factual issues remain to be resolved.

## III.

For the foregoing reasons, we reverse that portion of the OEA's order on appeal that upholds the MPD's 20-day suspension of Lt. Royal based on charges

---

[25] Instead, on the premise that the AJ sustained two of the April 2015 charges (Charges 2 and 3) and hypothetically could have relied on them to support the charge of inefficiency, the MPD argues that the AJ's erroneous reliance on the February 2015 allegations to find inefficiency was harmless. But as we have explained, the MPD did not rely on Charges 2 and 3 and they were not properly before the AJ for consideration.

[26] *D.C. Fire and Medical Servs. Dep't*, 986 A.2d at 424.

[27] *See King v. D.C. Dep't of Emp. Servs.*, 742 A.2d 460, 465 (D.C. 1999) ("If the agency fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue." (internal quotation marks omitted)).

arising from the events of April 16, 2015, and a charge of inefficiency.  In lieu thereof, we direct entry of an order reversing the suspension and, if necessary, directing the MPD to issue Lt. Royal any back pay to which he is entitled and to restore any benefits he lost as a result of the suspension.  We leave unaltered that portion of the OEA's order reversing the MPD's 15-day suspension of Lt. Royal based on charges arising from the events of February 7, 2015.

*So ordered.*